UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-7495-GW(ASx) | Date | June 28, 2019 |
|---|---|---|---|
| Title | *Na im Mustafa, et al. v. Christopher Morris, et al.* | | |

Present: The Honorable   GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | None Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** IN CHAMBERS - FINAL RULING ON *MARKMAN* HEARING/CLAIM CONSTRUCTION

Attached hereto is the Court's Final Ruling on *Markman* Hearing/Claims Construction.

:

Initials of Preparer   JG

<u>Na im Mustafa et al v. Christopher Morris et al.</u>, Case No. 2:18-cv-07495-GW-(ASx)
Final Ruling on *Markman* Hearing/Claims Construction

## I. INTRODUCTION

Plaintiffs Na im Mustafa d/b/a The Nono Bracket and The Nono Bracket Company, LLC ("Nono") bring this action against Defendant Christopher Morris ("Morris") seeking declaratory judgment of non-infringement and invalidity of Morris' U.S. Patent No. 9,986,865 ("the '865 Patent"). Docket No. 1 (Complaint) ¶ 6. Morris has filed counterclaims alleging direct, induced, and contributory infringement of the '865 Patent. Docket No. 9, Counterclaims ¶¶ 40-66.

The parties have submitted a Joint Claim Construction and Prehearing Statement. *See* Docket No. 36. The parties filed Opening Claim Construction Briefs in support of their positions regarding disputed terms on May 16, 2019. *See* Docket No. 37 (Morris' Opening Claim Construction Brief); Docket No. 38 (Nono's Opening Claim Construction Brief). The parties filed Responsive Claim Construction Briefs on May 30, 2019. *See* Docket No. 39 (Morris' Responsive Brief); Docket No. 40 (Nono's Responsive Brief).

A hearing was held on the parties' disputed claim terms on June 27, 2019 and the matter was taken under submission. The Court construes the disputed terms as stated herein.

## II. BACKGROUND

Morris alleges that he is the sole inventor and owner of the '865 Patent. Docket No. 9, Affirmative Defenses ¶ 2. It is titled "Retrofittable System and Apparatus for Hanging Articles on Pre-installed Supports" and issued June 5, 2018. The '865 Patent discloses a device that can hang articles on preinstalled supports, such as window treatments, without altering the existing structures. '865 Patent 2:33-38. The '865 Patent states that such a device is especially desirable when tenants wish to personalize their window treatments but are unable to remove, bore holes in, or otherwise modify the preinstalled fixtures because of their rental agreements. *Id.* at 1:41-67.

Morris alleges that Nono infringes Claims 7 and 14 of the '865 Patent. Docket No. 9, Counterclaims ¶ 43. The parties have claim construction disputes for thirteen terms contained in those claims. Docket No. 36 at 2-3. Claim 7 of the '865 Patent states:

> 7. A device for attachment to a pre-installed support, comprising: a body portion, comprising:

    a) at least one central portion, wherein the at least one central portion defines at least one central portion channel, and wherein the at least one central portion channel has at least two openings;
    b) a rear side; and
    c) a front side, the front side having at least one support portion, wherein the at least one support portion is configured to removably retain at least one article; and at least one mechanical means for anchoring, wherein the at least one mechanical means for anchoring is configured to pass through the at least one central portion channel and secure the device to at least one pre-installed support.

'865 Patent at Claim 7.

    Claim 14 of the '865 Patent depends from Claim 7 and states:

14. The device of claim 7, wherein the at least one mechanical means for anchoring comprises:
    a) at least one fixed-width hook element having at least one long side and at least one short side, the at least one fixed-width hook element having at least one short side channel in its at least one short side; and
    b) at least one means of attachment, wherein the at least one means of attachment is configured to pass through the at least one short side channel and the at least one central portion channel and removably secure the at least one fixed-width hook element to the body portion.

*Id.* at Claim 14.

    The technology described and claimed by the '865 Patent will be further explained in the sections that follow to the extent it is relevant to the parties' claim construction disputes.

### III. LEGAL STANDARD

#### A. *Claim Construction*

    Claim construction is an interpretive issue "exclusively within the province of the court." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). It is "a question of law in the way that we treat document construction as a question of law," with subsidiary fact-finding reviewed for clear error pursuant to Fed. R. Civ. P. 52(a)(6). *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S.Ct. 831, 837-40 (2015). The claim language itself is the best guide to the meaning of a claim term. *See Vederi, LLC v. Google, Inc.*, 744 F.3d 1376, 1382 (Fed. Cir. 2014). This is because the claims define the scope of the claimed invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). But a "person of ordinary skill in the art is deemed to read the claim

term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent." *Id.* at 1313. Thus, claims "must be read in view of the specification," which is "always highly relevant to the claim construction analysis." *Phillips*, 415 F.3d at 1315 (internal quotations omitted).

Although claims are read in light of the specification, limitations from the specification must not be imported into the claims. *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009). "[T]he line between construing terms and importing limitations can be discerned with reasonable certainty and predictability if the court's focus remains on understanding how a person of ordinary skill in the art would understand the claim terms." *Phillips*, 415 F.3d at 1323.

The prosecution history may lack the clarity of the specification, but it is "another established source of intrinsic evidence." *Vederi*, 744 F.3d at 1382. "Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Phillips*, 415 F.3d at 1317 (citations omitted). "Furthermore, like the specification, the prosecution history was created by the patentee in attempting to explain and obtain the patent." *Id.* "Yet because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.*

Claim construction usually involves resolving disputes about the "ordinary and customary meaning" that the words of the claim would have had "to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1312-13 (internal quotations and citations omitted). But in some cases, claim terms will not be given their ordinary meaning because the specification defines the term to mean something else. "[A] claim term may be clearly redefined without an explicit statement of redefinition," so long as a person of skill in the art can ascertain the definition by a reading of the patent documents. *Id.* at 1320; *see also Trustees of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1364 (Fed. Cir. 2016).

Where the patent itself does not make clear the meaning of a claim term, courts may look to "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean," including the prosecution history and "extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Phillips*, 415 F.3d at 1314 (internal quotations omitted). Sometimes, the use of "technical words or phrases not commonly understood" may give rise to a factual dispute, the determination

3

of which will precede the ultimate legal question of the significance of the facts to the construction "in the context of the specific patent claim under review." *Teva*, 135 S. Ct. at 841, 849. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. "In such circumstances, general purpose dictionaries may be helpful." *Id.*

B.  *Means-Plus-Function Claim Limitations*

A claim limitation may also be phrased as "a means or step for performing a specified function without the recital of structure, material, or acts in support thereof." 35 U.S.C. § 112(f).[1] Such limitations "shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." *Id.* This "means plus function" interpretation applies "only to purely functional limitations that do not provide the structure that performs the recited function." *Philips*, 415 F.3d at 1311. To construe a means-plus-function claim, first, "the court must first identify the claimed function." *Williamson v. Citrix Online*, 792 F.3d 1339, 1351 (Fed. Cir. 2015). Second, "the court must determine what structure, if any, disclosed in the specification corresponds to the claimed function." *Id.* Structures in the specification are "corresponding structure[s]" when "the intrinsic evidence clearly links or associates that structure to the function recited in the claim." *Id.* at 1352. If the patent does not disclose an "adequate corresponding structure, the claim is indefinite." *Id.*

IV. **ANALYSIS**

1. "at least one mechanical means for anchoring is configured to pass through the at least one central portion channel" (Claim 7)

| **Nono's Proposed Construction** | **Morris' Proposed Construction** |
|---|---|
| "a strap operative to bound the body against the pre-installed support"[2] | "something that physically fixes securely and is shaped to extend through the whole length of the passageway disposed in the middle or physical center and fasten |

---

[1] Section 112 ¶ 6 was renamed as § 112(f) by the America Invents Act, Pub. L. No. 112-29, which took effect on September 16, 2012. Because the relevant patent in this case for purposes of the parties' means-plus-function dispute was filed after the America Invents Act took effect, the § 112(f) nomenclature is used in this case.

[2] Nono's original proposed construction, as it appeared in its Joint Claim Construction Chart, was "a strap operative to bound the body against the headrail." Docket No. 36-1 at 7.

4

|  | something to a pre-installed support, such as a headrail or valence" |
|---|---|

The parties appear to agree that the "mechanical means for anchoring" term is a means-plus-function term. *See* Docket No. 37 at 17; Docket No. 38 at 7. Although the parties request construction of the full phrase "at least one mechanical means for anchoring is configured to pass through the at least one central portion channel" in Claim 7, the smaller phrase "means for anchoring" is relevant to the parties' dispute because it appears in *both* Claim 7 and Claim 14. The relevant portions of those claims state, *inter alia*:

> 7. A device for attachment to a pre-installed support, comprising . . . a front side, the front side having . . . at least one **mechanical means for anchoring**, wherein the at least one **mechanical means for anchoring** is configured to pass through the at least one central portion channel and secure the device to at least one pre-installed support.
>
> 14. The device of claim 7, wherein the at least one **mechanical means for anchoring** comprises . . . .

'865 Patent, Claims 7, 14 (emphasis added).

To construe a means-plus-function claim, first, "the court must first identify the claimed function." *Williamson*, 792 F.3d at 1351. Nono argues that the function of the term is "to pass through the at least one central portion channel **and** secure the body to a pre-installed support." Docket No. 38 at 9 (emphasis in original). Morris argues that the function is "to anchor the body of the device to the pre-installed support, such as a headrail or valance." Docket No. 37 at 18. The claimed function for a means-plus-function term must be based on the claim language itself. *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1319 (Fed. Cir. 2003); *see also Williamson*, 792 F.3d at 1351. Here, the relevant means-plus-function claim phrase is "mechanical means for anchoring." This phrase is repeated in the two asserted claims, as well as other unasserted claims in the '865 Patent. The additional phrase "configured to pass through the at least one central portion channel and secure the device to at least one pre-installed support" is a separate claim limitation appearing only in Claim 7 that describes the relationship of the "mechanical means for anchoring" component with other components of the claimed device. Based on this understanding of the claim language, the relevant function is: "anchoring."

After identifying the function, "the court must determine what structure, if any, disclosed in the specification corresponds to the claimed function." *Williamson*, 792 F.3d at 1351. Means-

5

plus-function claim limitations "shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112(f). Morris' proposed construction does not identify a specific disclosed structure from the specification and thus lacks specificity as to what structures are covered. On the other hand, Nono's proposed construction is too narrow, limiting the corresponding structure solely to a strap.

The specification discloses multiple means of anchoring. In the "Summary" Section of the specification, the '865 Patent states,

> In an embodiment, the mechanical means for anchoring may comprise a ***hook*** operative to hang the body from a top side or edge of the pre-installed support so that it may hang with its back side against a front facing portion of the pre-installed support. As another example, a ***resilient clip*** may be provided to forcibly compress the pre-installed support against the back side of the body. As yet another example, the body may define a channel or series of holes configured to receive a ***rugged strap, such as a zip-tie***, operative to lash the body against the pre-installed support.

'865 Patent 2:60-3:2 (emphasis added). In the "Detailed Description" Section of the specification, the '865 Patent further describes "means for anchoring" embodiments, including a "resilient clip **15**," "adjustable and securable ridged plank **16***a* and stopper **16***b*," "fixed-width hook **17**," and "rugged strap **19**." '865 Patent at 5:7-10, 5:37-40, 5:44-54. As illustrated by Figures 6 and 7, the specification discloses that a ***strap*** **19** is a means of "anchoring the device" by passing through "a ***channel*** **18** running from the top end **11** to the bottom end **12** of the body." *Id.* at 5:49-55



(emphasis added).

*Id.* at Figs. 6, 7 (annotations added); *see also id.* at 5:55-57 ("The strap **19** may be a cable tie, zip tie, natural or synthetic cord, or any other length of material capable of securing an embodiment of the body **10** against a pre-installed support.").

As shown in Figures 1, 4, and 9A, the "resilient clip **15**," "ridged plank **16***a* and stopper **16***b*," and "fixed-width hook **17**" are also means of anchoring. *Id.* at 5:7-10, 5:37-40, 5:44-54.



*Id.* at Figs. 1, 4, 9A (annotations added).

Based on these disclosed examples in the '865 Patent specification, the clip, plank and stopper, hook, and "rugged strap" (including a zip-tie) are each clearly linked to the recited function in the claims of "anchoring."

The Court does acknowledge that it is still a requirement of Claim 7 that the mechanical means for anchoring be "configured to pass through the at least one central portion channel and secure the device to at least one pre-installed support." The parties have not presented a dispute regarding the meaning of the phrase "pass through." Instead, both parties appear to agree that for a component to "pass through" the central portion channel, it must fully extend through the channel. *See* Docket No. 39 at 9; Docket No. 40 at 8. Based on this understanding of the claim language, for the identified means for anchoring (including a clip, plank, hook, or strap) to satisfy the additional requirements of Claim 7, they must be of a form where the fully pass through the central portion channel. However, because the Court has found that this claim language is not a part of the means-plus-function phrase itself, the same stringent requirements of means-plus-function claiming, including disclosure in the specification "clearly linking" a structure to the recited function, are not required. Instead, the Court adheres to the general claim construction rule

that limitations from the specification should not be imported into the claims. *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009).

The Court construes the term "mechanical means for anchoring" as follows:

> Governed by § 112(f):
>
> **Function:** anchoring
>
> **Structure:** strap **19**, resilient clip **15**, ridged plank and stopper **16***a* and **16***b*,
>
> fixed-width hook **17**, and equivalents thereof. *See* '865 Patent at 5:7-10, 5:37-
>
> 40, 5:44-54, Figs. 1, 4, 6, 7, 9A.

2. <u>"at least one means of attachment is configured to pass through the at least one short side channel and the at least one central portion channel and removably secure the at least one fixed-width hook element to the body portion" (Claim 14)</u>

| **Nono's Proposed Construction** | **Morris' Proposed Construction** |
|---|---|
| "a strap to go through the short side channel of the fixed-width hook and then through the central portion channel of the body and removably secure the fixed-width hook to the body, and then bound the body against the pre-installed support" [3] | "something that fastens, connects, or mounts and is shaped to extend the whole length of corresponding passageways, one disposed in the middle or physical center of the main portion and one disposed in the part of relatively lesser distance" |

The parties also agree that the "means of attachment" term is governed by 35 U.S.C. § 112(f) but disagree on the term's function. *See* Docket No. 37 at 23; Docket No. 38 at 12. Again, the parties refer to the full phrase "at least one means of attachment is configured to pass through the at least one short side channel and the at least one central portion channel and removably secure the at least one fixed-width hook element to the body portion." However, the smaller phrase "means of attachment" appears in Claim 14 twice. Claim 14 states:

> 14. The device of claim 7, wherein the at least one mechanical means for anchoring comprises:
>   a) at least one fixed-width hook element having at least one long side and at least one short side, the at least one fixed-width hook element having at least one short side channel in its at least one short side; and

---

[3] Nono's original proposed construction, as it appeared in its Joint Claim Construction Chart, was "a strap to go through the short side channel of the fixed-width hook and then through the central portion channel of the body and removably secure the fixed-width hook to the body, and then bound the body against the head rail." Docket No. 36-2 at 4.

>   b) at least *one means of attachment*, wherein the at least *one means of attachment* is configured to pass through the at least one short side channel and the at least one central portion channel and removably secure the at least one fixed-width hook element to the body portion.

'865 Patent, Claim 14 (emphasis added). As with the "mechanical means for anchoring" term, the Court finds that the smaller phrase "means for attachment" is the relevant means-plus-function phrase for construction. Based on this determination, the Court rejects Nono's proposed function for the term, which refers to other claim language that is not part of the smaller means-plus-function phrase, and agrees with Morris that the proper claimed function is "attachment." Docket No. 38 at 12; Docket No. 37 at 23.

Regarding corresponding structure, also as with the "mechanical means for anchoring" term, Morris' proposed construction does not identify any structure disclosed with specificity in the patent specification that corresponds to the recited function. Docket No. 37 at 23. Nono argues that there is no disclosed structure that corresponds with what it has identified as the recited function and concludes on that basis that the claim phrase is indefinite. Docket No. 38 at 12.

The specification only names "screws [or] nails" as "means of attachment." *See* '865 Patent 6:53. These means of attachment are described in the patent specification as being capable of insertion into "one or more holes **26**," illustrated in Figure 5, to attach "decorative brackets and other hardware" for "disguis[ing] the retrofittable device" *Id.* at 6:49-53.



*Id.* at Fig. 5 (annotation added). Based on the language in the specification, screws and nails are the only two structures that are clearly linked to the claimed function of "attachment."[4]

---

[4] Although the specification identifies screws and nails as structures that may correspond to the claimed function, the full claim language of Claim 14 and its relationship to the claim language of Claim 7 seem to create some

The Court construes the term "means of attachment" as follows:

Governed by § 112(f):

**<u>Function:</u>** attachment

**<u>Structure:</u>** screws, nails, and equivalents thereof.  *See* '865 Patent at 6:49-53; Fig. 5.

3. <u>"at least one fixed-width hook element" (Claim 14)</u>

| **Nono's Proposed Construction** | **Morris' Proposed Construction** |
|---|---|
| "a linking member that requires a body to be operable" | "a piece that is bent at a sharp angle of a particular width and which is adapted to hold onto something" |

Morris' proposal for the phrase "at least one fixed-width hook element" uses definitions from the 2003 *Oxford-English Dictionary*. Docket No. 37 at 19 (defining "fixed width" as "a particular width" and a hook as "a length of . . . material . . . with a sharp angle"). It appears that Morris is attempting to capture his understanding of the plain and ordinary meaning of the term in

---

concerns. As described previously, Claim 7 requires that the claimed "mechanical means for anchoring" must "pass through" the central channel. Further, the specification describes a fixed-width hook as a potential mechanical means for anchoring. Thus, Claim 7 requires that the fixed-width hook itself pass through the central channel. Claim 14, meanwhile, requires a mechanical means for anchoring that is a ***combination*** of a fixed-width hook (with a long and short side, where the short side has a channel it it) ***and*** a means of attachment (that passes through the channel in the fixed-width hook and the central channel). In other words, in the Claim 14 configuration, it would not seem that the fixed-width hook itself would pass through the central channel. Instead, the fixed-width hook could effectively sit on top of the central portion, with a channel of its own that syncs up with the central portion channel so that a nail or screw could pass through the two stacked channels (and thus attach/connect the fixed-width hook and the central portion). But this interpretation of the claim language, if correct, would create irreconcilable requirements for the fixed-width hook: Claim 7 requires the fixed-width hook to pass through the channel, while this interpretation of Claim 14 would seem to require an independent means for attachment to pass through the central channel that is not the fixed-width hook. Because of these conflicting requirements, the Court has concerns that Claim 14 may fail to satisfy the requirements of 35 U.S.C. § 112. *See* 35 U.S.C. § 112, ¶ 4 ("[A] claim in dependent form shall contain a reference to a claim previously set forth and then specify a further limitation of the subject matter claimed. A claim in dependent form shall be construed to incorporate by reference ***all the limitations*** of the claim to which it refers." (emphasis added)). These sentiments were included in a similar footnote in the tentative order distributed to the parties at the claim construction hearing. During the hearing, Nono made a similar argument, suggesting that Claim 14 is invalid because it has inconsistent limitations compared to Claim 7. When it was his turn, Morris did not meaningfully respond to Nono's argument or the Court's footnote, amplifying the Court's concerns. However, the Court declines to reach a final determination regarding the validity of Claim 14 at this time because the record on the issue has not been fully developed, and Nono's arguments regarding validity were intertwined with other claim construction positions that the Court rejects. Nono may renew an invalidity argument in the form of an appropriate motion at a later date.

his construction. However, it is not clear that Morris' transcribed interpretation of the phrase would be helpful to a jury.

Nono argues that the term should be construed as "a linking member that requires a body to be operable." Docket No. 38 at 10. Nono appears to base its proposal on certain language in the specification. In particular, Nono's proposal comes from language in the specification referring to a "linking member." In Figure 1, for instance, the patent explains that an embodiment of the invention "may comprise a body **10** and a *linking member* **20** that are optionally separable." '865 Patent at 5:66-6:4 (emphasis added). The specification further discloses that "[t]he linking member may be a *hook* **23**b," as shown in Figure 2. *Id.* at 6:27-28 (emphasis added).



*Id.* at Figs. 1, 2 (annotations added).

However, elsewhere, the specification discloses that an "embodiment of mechanical means for anchoring the body **10** against the pre-installed support may comprise a *fixed-width hook* **17** sized to receive a particular width." '865 Patent 5:44-48 (emphasis added). This description is the only instance where the *full* term "fixed-width hook" is used in the specification. The fixed-width hook **17** is depicted only in Figure 9A of the '895 Patent. In introducing Figure 9A, the specification states, the "body **10**, mechanical means of anchoring, and even [a] linking member **20**," as shown in Figure 1, may be "formed as a single, integrated piece." *Id.* at 6:12-15. In other words, in Figure 9A embodiment, the linking member **20** appears to be equivalent to the body **10**.

11



*Id.* at Fig. 9A (annotation added).

Nono's argument that the fixed-width hook element should be construed as a "linking member" appears inconsistent with this disclosure in the specification, where the fixed-width hook element only appears to be described as ***part of*** a linking member **20**/body **10**. Docket No. 38 at 10-11. Based on a comparison between the specification and drawings of the "fixed-width hook" in Figure 9A and the "linking member" in Figures 1 and 2, it does not appear that the fixed-width hook is equivalent to the linking member and, therefore, should not be construed as such.

Nono's proposed construction also includes the phrase "requires a body to be operable." It is unclear what Nono attempts to add with this language, or where it comes from. The only justification for the phrase appears in Nono's Responsive Brief, which merely states that the "linking member requires a body portion to be operable." Docket No. 40 at 9. Nono has not explained why this language is necessary in the construction of "at least one fixed-width hook element" and, accordingly, this portion of its proposal is rejected.

Nothing in the intrinsic record suggests use of the term "at least one fixed-width hook element" that is inconsistent with its ordinary meaning. At most, the Court might consider construing the term as "at least one hook of a fixed width." However, neither party requested such a construction, and the Court is not entirely convinced that a jury would need it to understand the meaning of the phrase. Accordingly, the Court finds that no construction is necessary for the term "at least one fixed-width hook element."

    4.    <u>"at least one central portion," "at least one central portion channel has at least two openings," "a rear side," "a front side," "at least one support portion is configured to removably retain at least one article," "at least one long side," "at least one short side," and "at least one short side channel in its at least one short side"</u>

| Term | Nono's Proposed Construction | Morris' Proposed Construction |
|---|---|---|
| "at least one central portion" (Claim 7) | "the part of the body that is in the center of the body" | "the portion which is in the middle or physical center" |
| "at least one central portion channel has at least two openings" (Claim 7) | "a channel running from the top end of the body to the bottom end of the body located in the part of the body that is in the center of the body, which has a first opening at the top end of the body and a second opening at the bottom of the body" | "The passageway which is disposed in the middle or physical center has two means of egress and ingress, that is, two accessible portions" |
| "a rear side" (Claim 7) | "the back side of the body which is bound with a strap against the preinstalled support"[5] | "the back-facing, hindmost portion" |
| "a front side" (Claim 7) | "the front side of the body which has at least one support portion" | "the front-facing, foremost portion" |
| "at least one support portion is configured to removably retain at least one article" (Claim 7) | "the front portion of the front side of the body having a shape to removably hold an article in place" | "something that bears the weight of something or holds something up and is shaped to hold an item in place, which can later be taken away" |
| "at least one long side" (Claim 14) | "one side of the fixed-width hook element is longer relative to the other side" | "a part of relatively greater distance" |

---

[5] Nono's original proposed construction, as it appeared in its Joint Claim Construction Chart, was, "the back side of the body which is bound with a strap against the head rail." Docket No. 36-1 at 4.

| "at least one short side" (Claim 14) | "one side of the fixed-width hook element is shorter relative to the other side" | "a part of relatively lesser distance" |
| --- | --- | --- |
| "at least one short side channel in its at least one short side" (Claim 14) | "the shorter side of the fixed-width hook element has an opening on the top and an opening on the bottom and a channel running through between the two openings" | "a passageway disposed in the part of relatively lesser distance" |

Morris' proposed constructions for the terms "at least one central portion," "at least one central portion channel has at least two openings," "a rear side," "a front side," "at least one support portion is configured to removably retain at least one article," "at least one long side," "at least one short side," and "at least one short side channel in its at least one short side" are again based on definitions from the 2003 *Oxford-English Dictionary*. *See, e.g.*, Docket No. 37 at 9 ("'[C]entral' . . . is . . . the physical center or middle of something . . . constituting the center."); *see also id.* at 10 ("at least one central portion channel has at least two openings"); *id.* at 12 ("a rear side"); *id.* at 13 ("a front side"); *id.* at 14 ("at least one support position is configured to removably retain at least one article"); *id.* at 20 ("at least one long side"); *id.* ("at least one short side"); *id.* at 21 ("at least on short side channel in its at least one short side"). Although these proposed constructions appear to be consistent with the terms' plain meanings, Morris has not sufficiently explained the purpose or benefit of construing these easily-understood terms.

Nono's proposals for these terms incorporate surrounding claim language. *See, e.g.*, Docket No. 38 at 5 (proposing that the "at least one central portion be construed as part of the body" when the immediately preceding language states "a body portion, comprising"); *see also id.* ("at least one central portion channel has at least two openings"); *id.* at 6 ("a rear side"); *id.* ("a front side"); *id.* at 7 ("at least one support position is configured to removably retain at least one article"); *id.* at 11 ("at least one long side"); *id.* ("at least one short side"); *id.* ("at least on short side channel in its at least one short side"). Nono's proposed constructions create unnecessary redundancy in the claim language.

Additionally, for the terms "at least one central portion channel has at least two openings" and "a rear side," Nono improperly imports limitations from the specification into its proposed constructions. Nono's proposed construction for the former term specifies that, as described in

14

one embodiment in the specification, two openings must each be located at the top and bottom of the body. Docket No. 38 at 5-6. This limitation, however, is not supported by the claim language or any other intrinsic evidence besides the embodiment described. *See* '865 Patent at 5:49-54; *Abbott Labs.*, 566 F.3d at 1288 ("[C]ourts must take care not to import limitations into the claims from the specification."). Similarly, Nono's proposal for "a rear side" includes the term "strap," which is only used to describe an embodiment in the specification. *See id.* at 2:66-3:2, 5:52-60.

The intrinsic evidence does not indicate that these terms should be understood by anything other than their plain and ordinary meanings. After considering the parties' arguments, the Court finds that no construction is necessary for the terms "at least one central portion," "at least one central portion channel has at least two openings," "a rear side," "a front side," "at least one support portion is configured to removably retain at least one article," "at least one long side," "at least one short side," and "at least one short side channel in its at least one short side."

5. "a device for attachment to a pre-installed support" and "a body portion"

| Term | Nono's Proposed Construction | Morris' Proposed Construction |
|---|---|---|
| "a device for attachment to a pre-installed support" (Claim 7) | "an apparatus for attachment to a pre-installed support that is comprised of a body portion"[6] | "something that mounts to a pre-installed support, such as a headrail or valence" |
| "a body portion" (Claim 7) | "having a top end, a bottom end, a front side, a back side, and a mechanical means for anchoring the body along its back side against the pre-installed support with the mechanical means for anchoring configured to pass through a central portion channel" | "The main portion" |

The terms "a device for attachment to a pre-installed support" and "a body portion" are parts of the preamble of Claim 7. *Id.* at Claim 7. Preamble terms can limit the scope of a claim if they recite "essential structure or steps" or are "necessary to give life, meaning, and vitality to the claim." *TomTom, Inc. v.* Adolph, 790 F.3d 1315, 1323 (Fed. Cir. 2015) (citing *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002)). Otherwise, terms in the preamble are not limiting when the body of the claim "describes a structurally complete invention"

---

[6] Nono's original proposed construction, as it appeared in its Joint Claim Construction Chart, was "an apparatus for attachment to a head rail that is comprised of a body portion." Docket No. 36-1 at 1.

or when the preamble states an intended use. *Catalina*, 289 F.3d at 809.  In addition to the same reasons the Court provides in the previous section for declining to construe commonly-understood words and phrases, Nono has not shown that construction of these preamble terms is appropriate. The preamble of Claim 7 states that the claimed invention is "a device for attachment to a pre-installed support, comprising: a body portion, comprising." '865 Patent, Claim 7.  The remainder of the claim then fully describes the minimum components of this attachment device.  Thus, it does not appear that the terms are necessary and defining.  Rather, the preamble of Claim 7 is a statement of intended use and the body of the claim describes a complete invention.  *See id.*

At the hearing, Nono seemed to argue that construction of the term "a body portion" should be limited to the exact embodiment described in the specification, including having a means for anchoring limited to a strap.  The logic of Nono's argument appeared to be that because the term "a body portion" appears in a claim that also includes a means-plus-function phrase, construction of the term "a body portion" when considered with the other claim requirements (including the means-plus-function term) must be limited to the specific corresponding embodiments disclosed in the specification.  Nono did not address the fact that the term "a body portion" is a preamble term or otherwise respond to the Court's analysis to this end in its tentative order.  Nono also failed to explain how its argument is consistent with the general claim construction rule that claim terms should not be limited to the embodiments, even if they are preferred embodiments, disclosed in the specification.  *See Abbot Labs.*, 556 F.3d at 1288.  Having further considered Nono's position, the Court finds it unpersuasive.

For these additional reasons, the terms "a device for attachment to a pre-installed support" and "a body portion" are not construed.

     5.    <u>Nono's Other Invalidity Arguments</u>

Nono argues that Claims 7 and 14 are invalid for failing to meet the written disclosure requirements under 35 U.S.C. § 112.  Docket No. 38 at 10, 13-15.  Written description arguments are not appropriately considered at the claim construction stage.  Although the Court agrees that there may be some § 112 concerns related to these claims, it declines to address them at this time.

**V.**    **<u>CONCLUSION</u>**

For the reasons stated, the Court adopts the following constructions for the disputed claim terms:

| Term | Court's Construction |
|---|---|
| "at least one mechanical means for anchoring is configured to pass through the at least one central portion channel" (Claim 7) | Governed by § 112(f):<br><br>**Function:** anchoring<br><br>**Structure:** strap **19**, resilient clip **15**, ridged plank and stopper **16***a* and **16***b*, fixed-width hook **17**, and equivalents thereof. *See* '865 Patent at 5:7-10, 5:37-40, 5:44-54, Figs. 1, 4, 6, 7, 9A. |
| "at least one means of attachment is configured to pass through the at least one short side channel and the at least one fixed-width hook element to the body portion" (Claim 14) | Governed by § 112(f):<br><br>**Function:** attachment<br><br>**Structure:** screws, nails, and equivalents thereof. *See* '865 Patent at 6:49-53; Fig. 5. |
| "at least one fixed-width hook element" (Claim 14) | no construction necessary |
| "at least one central portion" (Claim 7) | no construction necessary |
| "at least one central portion channel has at least two openings" (Claim 7) | no construction necessary |
| "a front side" (Claim 7) | no construction necessary |
| "a rear side" (Claim 7) | no construction necessary |
| "at least one support portion is configured to removably retain at least one article" (Claim 7) | no construction necessary |
| "at least one long side" (Claim 14) | no construction necessary |
| "at least one short side" (Claim 14) | no construction necessary |
| "at least one short side channel in its at least one short side" (Claim 14) | no construction necessary |
| "a device for attachment to a pre-installed support" (Claim 7) | no construction necessary |
| "a body portion" (Claim 7) | no construction necessary |